UNITED STATE DISTRICT COURT
WESTERN DISTRICT OF TEXAS

**SOUTHWEST REFRIGERATED WAREHOUSING
SERVICES JOINT VENTURE,**

    **Plaintiff and Counter-Defendant,**

v.                                                                                  No. 3:20-cv-0060-DB

**YOUNG GUNS, INC., CHRIS FRANZOY,
and TAMMY FRANZOY,**

    **Defendants (and Young Guns, Inc., as Counter-Claimant)**

### ANSWER TO PLAINTIFF'S ORIGINAL PETITION AND COUNTERCLAIM FOR BREACH OF CONTRACT AND FRAUD

Defendants Young Guns, Inc., Chris Franzoy, and Tammy Franzoy, by and through their counsel, MYNATT MARTÍNEZ SPRINGER P.C. (Sara E. Woods), submit the following answer to Plaintiff's Original Petition as follows:

1. The statements contained in ¶ 1 of Plaintiff's Original Petition reference matters relevant to the claims in state court and have been made superfluous by removal to federal court; to the extent a response is required, Defendants deny the allegations contained therein.

2. The allegations contained in ¶ 2 of Plaintiff's Original Petition are admitted.

3. With regard to the allegations contained in ¶ 3 of Plaintiff's Original Petition, Defendants admit that Chris Franzoy is a resident of Las Cruces, New Mexico. Allegations relevant to service of process have been rendered moot because Mr. Franzoy has accepted service.

4. With regard to the allegations contained in ¶ 4 of Plaintiff's Original Petition, Defendants admit that Tammy Franzoy is a resident of Las Cruces, New Mexico. Allegations relevant to service of process have been rendered moot because Mrs. Franzoy has accepted service.

5. With regard to the allegations contained in ¶ 5 of Plaintiff's Original Petition, Defendants admit that Young Guns, Inc., ("Young Guns") is a New Mexico corporation. Allegations relevant to service of process have been rendered moot because Mr. Franzoy has accepted service on behalf of Young Guns.

6. With regard to the allegations contained in ¶ 6 of Plaintiff's Original Petition, Defendants admit that the Texas County Court has jurisdiction and venue, but removal of this case to federal court renders that moot.

7. With regard to the allegations contained in ¶ 7 of Plaintiff's Original Petition, Defendants admit that Plaintiff seeks to recover more than $200,000 and less than $1,000,000, but deny that Plaintiff is entitled to any recovery.

8. The allegations contained in ¶¶ 8 and 9 of Plaintiff's Original Petition are admitted.

9. With regard to the allegations contained in ¶ 10 of Plaintiff's Original Petition, Defendants admit that the Franzoy's executed the Storage and Guarantee Agreement that is attached to the Original Petition. With regard to the subparts of ¶ 10, Defendants state that the contract speaks for itself, and admits the allegations in subparagraphs a, b, and c to the extent that they are consistent with the contract, and otherwise deny them. Defendants affirmatively state that any agreement as to either requirement or amount were part of another agreement with a company affiliated with Plaintiff, and designed to ensure that Young Guns' agreement with that affiliated company was fully honored. That agreement was, in fact, fully honored, and the requirement provisions and provision as to the amount of chile were rendered null.

10. The allegations contained in ¶ 11 of Plaintiff's Original Petition are admitted.

11. The allegations contained in ¶ 12 of Plaintiff's Original Petition are denied. Defendants affirmatively state that Plaintiff breached its contractual obligations to Defendants, which relieved Defendants of any remaining obligations they might otherwise have owed to Plaintiff.

12. With regard to the allegations contained in ¶ 13 of Plaintiff's Original Petition, Defendants admit that Plaintiff advised Defendants that due to problems at its facility, it was unable to accept any more product from Defendants, and advised them to make arrangement to ship their product elsewhere, which Defendants did. Later, Plaintiff advised that the problem had been resolved, and instructed Defendants to resume their shipments to Plaintiff, which they did. Defendants thereafter learned that Plaintiff had breached its contractual duty to blast freeze the Defendants products and to keep them frozen. Defendants sought, but did not obtain, reasonable assurances that the problems that allegedly kept Plaintiff from blast freezing the product, and keeping the product frozen, and then began to move its chile to another facility that could adequately keep the product frozen. To the extent necessary, Defendants deny the balance of the allegations in ¶ 13 of Plaintiff's Original Petition.

13. The allegations contained in ¶ 14 of Plaintiff's Original Petition are denied.

14. No response is required to the matters set forth in ¶ 15 of Plaintiff's Original Petition; to the extent a response is required, Defendants incorporate their responses as appropriate.

15. The allegations contained in ¶ 16 of Plaintiff's Original Petition are denied.

16. No response is required to the matters set forth in ¶ 17 of Plaintiff's Original Petition; to the extent a response is required, Defendants incorporate their responses as appropriate.

17. The allegations contained in ¶¶ 18 and 19 of Plaintiff's Original Petition are denied.

18. With regard to the allegations contained in ¶ 20 of Plaintiff's Original Petition, Defendants admit that Plaintiff has hired counsel and that it seeks to recover its fees and costs, but denies that it entitled to do so.

19. The allegations contained in ¶ 21 of Plaintiff's Original Petition are denied.

20. With regard to the allegations contained in ¶ 22 of Plaintiff's Original Petition, Defendants recognize that Plaintiff has sought to reserve certain rights, and affirmatively state that its right to amend or supplement its pleadings is for the Court to decide.

21. The statements contained in ¶ 23 of Plaintiff's Original Petition reference matters relevant to the claims in state court and have been made superfluous by removal to federal court; to the extent a response is required, Defendants deny the allegations contained therein

22. The statements contained in ¶ 24 of Plaintiff's Original Petition are a prayer for relief, to which no response is required. To the extent a response is required, Defendants admit that Plaintiff seeks the relief which it has requested, but denies that Plaintiff is entitled to that relief.

23. All allegations not specifically admitted are hereby denied.

24. By way of affirmative defenses, Defendants assert that Plaintiff's claims are barred by its prior breach of contract, by the doctrine of accord and satisfaction, by its bad faith, by its breach of a condition precedent.

## COUNTERCLAIM

Young Guns, Inc., by and through its counsel, MYNATT MARTÍNEZ SPRINGER P.C. (Sara E. Woods), asserts a counterclaim against Plaintiff, and states as follows:

### Parties, Jurisdiction and Venue

1. Plaintiff, Young Guns, Inc. ("Young Guns"), is a New Mexico corporation, with its principal place of business located in New Mexico.

2.      Defendant, Southwest Refrigerated Warehousing Services Joint Venture ("Southwest Refrigerated"), is a general partnership organized and existing solely within the State of Texas, comprised of businesses and/or individuals who do not reside in New Mexico.

3.      There is complete diversity between the Plaintiff and Defendant.

4.      This case involves a dispute with a value of more than $75,000, exclusive of costs, interest, and attorneys' fees.

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

6.      This Court has jurisdiction over the parties and venue is properly vested in this Court.

## COUNT 1:  BREACH OF CONTRACT

7.      Youngs Guns contracts with a number of farmers to grow a variety of crops, but especially chile (to include jalapeños). Young Guns processes the chile, packages it, and sells it to a number of individuals and businesses throughout the country.

8.      As required by law, Young Guns complies with the Global Food Safety Initiative ("GFSI"), which requires it to do business only with businesses that also comply with the GFSI. Young Guns communicated to Southwest Refrigerated that it required it be GFSI compliant, and Southwest Refrigerated assured Young Guns that it was GFSI compliant, which meant it had accepted audit from a GFSI-certified auditor using a GFSI-approved scheme.

9.      Young Guns thereafter contracted with Southwest Refrigerated to blast freeze its product, then store the frozen chile until it was needed, agreeing to pay Southwest $0.025 per pound for blast freezing, $0.01 per pound for cold storage of the then frozen product, and $0.011 per pound for handling.

10. Blast freezing is a process by which the product is super-chilled, causing it to freeze quickly. The industry standard is that the product is held at -30 degrees Fahrenheit degrees until the product achieves a core temperature of no less than -10 degrees Fahrenheit.

11. Blast freezing is essential because it decreases the chance that bacteria can grow and spoil the product, and it significantly increases the drain weight which keeps the value of the frozen chile from being diminished due to decreased drain weight.

12. Cold storage of a frozen product requires holding the product at a temperature to ensure that the product remains frozen, and is at a temperature such that it will remain frozen when it is subsequently removed from the freezer and prepared for shipping. The industry standard is that product is held at -10 degrees Fahrenheit while in cold storage.

13. By the fall of 2019, Young Guns caused approximately 3.4 million pounds of chile to be shipped to Southwest Refrigerated for blast freezing and storage, with the first product being shipped to Southwest Refrigerated in June, 2019.

14. On or about August 22, 2019, after Young Guns shipped a significant quantity of chile to Southwest Refrigerated, Southwest Refrigerated contacted Young Guns and advised that it had an electrical problem and problems with its equipment, and could not accept any additional product. Southwest Refrigerated directed Young Guns to send it product elsewhere and Young Guns complied.

15. A few days later, Southwest Refrigerated advised that the problem had been resolved, and instructed Young Guns to resume shipping to Southwest Refrigerated. Young Guns complied.

16. On or about September 11, 2019, a principal of Young Guns went to Southwest Refrigerated to inspect and inventory Young Guns products. During this visit, he discovered:

      a.      Young Gun's product had not been blast frozen;

      b.      Some of Young Guns' product was not frozen at all;

      c.      Young Gun's product was being maintained at approximately 31.5 to 32.0 degrees;

      d.      Pallets of product had been stacked haphazardly, and some pallets had fallen, boxes of product had opened, and bags of product had opened.

17. Because the product had not been blast frozen and was not completely frozen, Southwest Refrigerated encouraged Young Guns to have its product tested for food safety, and promised to pay for the costs of testing. Subsequent testing showed elevated levels of bacteria, which is consistent with failure to properly freeze the chile. Southwest Refrigerated has failed and refused to pay for the testing.

18. Southwest Refrigerated's last GFSI audit was dated 2017; Southwest Refrigerated falsely told Young Guns that it had been successfully reaudited since that time.

19. Concerned with the condition of its product, Young Gun's demanded reasonable assurances that the temperature of its product would be reduced and the product would be solidly frozen.

20. Southwest Refrigerated never provided Young Guns with the requested reasonable assurances.

21. Young Guns then transferred as much of its product as it could to one of Southwest Refrigerated's competitors.

22. On November 13, 2019, Southwest Refrigerated emailed invoices and statements to Young Guns; these were the first invoices and statements provided by Southwest Refrigerated for 2019, totaling approximately $290,000.

23. Young Guns protested the portion of the invoices which charged for blast freezing, but remitted its check for the balance, excluding blast freezing charges, as payment in full of the amounts owed to Southwest Refrigerated.

24. Southwest Refrigerated responded with a letter claiming:

    a. that there was an outstanding balance owed of $544,262.81, ($255,000 more than prior invoices);

    b. That the continued failure to pay the amount was a breach of contract, (even though Southwest Refrigerated had only recently sent invoices to Young Guns);

    c. That if the entire amount was not paid by January 10, 2020, Southwest Refrigerated would sell Young Guns products.

25. Southwest Refrigerated breached its contract by failing to blast freeze Young Gun's products, by failing to keep the product frozen, and by failing to maintain the product at a commercially acceptable temperature.

26. Young Guns should not have to pay the amount demanded by Southwest Refrigerated because Southwest Refrigerated failed to provide the services for which it invoiced (blast freezing) and failed to provide the quality of services for which it invoiced.

27. Southwest Refrigerated has invoiced Young Guns for handling charges for which has already been paid.

28. Young Guns has been damaged by Southwest Refrigerated's breach of contract in that it has lost product to bloat, has incurred expenses to test its product, and will be forced to reimburse its customers because of damage to its product caused by the temperature abuse for which Southwest Refrigerated is responsible.

29. Southwest Refrigerated has more than 350,000 pounds of Young Guns' product in its refrigerated storage facility. Young Guns needs to sell this product to its customer, but Southwest Refrigerated refuses to release the product to Young Guns unless Young Guns pays for the blast freezing services that were never provided.

30. Young Guns will suffer financial loss if it is unable to provide the product currently held by Southwest Refrigerated to Young Guns' customer; it will not only lose the profit on the transaction, but will likely lose customers to one of Young Guns' competitors.

31. Because Southwest Refrigerated failed to blast freeze Young Guns' chile, the drain weight of Young Guns' product was reduced, reducing the value of the its chile.

32. In addition to the contract for 2019-2020, Young Guns has contracted with Southwest Refrigerated during other years. With the benefit of hindsight, Young Guns now knows that Southwest Refrigerated breached its contract in a similar fashion in years past, also to Young Guns' damage and detriment.

33. During the two years prior to the current contract, Youngs Guns was forced to discount product sold to customer because the drain weight was so high; the discounts totaled approximately $1,500,000.

34. During the two years prior to the current contract, Young Guns was forced to destroy approximately 500,000 pounds of product because of bloat, a condition evidencing bacterial contamination.

35. During the two years prior to the current year, Young Guns paid Southwest Refrigerated tens of thousands of dollars to blast freeze Young Guns' product.

36. During the two years prior to the current year, Southwest Refrigerated did not blast freeze the chile, in violation of the prior contracts.

**37.** Young Guns has been damaged by Southwest Refrigerated's breach of the 2019-2020 contract and by the breach of the contracts covering prior years.

## COUNT II - FRAUD

38. Southwest Refrigerated made material representations to Young Guns, including the claim that it would blast freeze its chile, and later that it had blast frozen Young Guns' chile, and that it had a current, valid GFSI audit.

39. The representations made by Southwest Refrigerated were false.

40. Southwest Refrigerated knew the representations were false, and made them recklessly without any knowledge of the truth of the representations.

41. Southwest Refrigerated made the representations with the intent that Young Guns rely on them.

42. Young Guns acted in reliance on the representations made by Southwest Refrigerated.

43. Young Guns suffered injury as a result of its reliance on Southwest Refrigerated's representations.

Wherefore, Young Guns respectfully requests that this Court enter judgment in its favor, and against Southwest Refrigerated, for general damages and special damages in an amount to be proven at trial, and that Young Guns be awarded its reasonable costs, and such further relief as the Court deems appropriate under the circumstances.

Respectfully submitted,

MYNATT MARTÍNEZ SPRINGER P.C.

_____
SARA E. WOODS
P.O. Box 2699
Las Cruces, NM 88004
(575) 524-8812
sew@mmslawpc.com
*Attorneys for Defendants*

## CERTIFICATE OF DELIVERY

I hereby certify that on this 27th day of March 2020, a true and correct of the foregoing was served upon all counsel of record via email and the CM/EFC Filer System.

Randy Lee
705 West Wadley, Suite 210-I
Midland, Texas 79705
randyleeattorney@gmail.com
*Attorneys for Plaintiff*

_____
SARA E. WOODS